UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

|  |  |  |
|---|---|---|
| ANGIE MARIE BRIONES, | ) | No. CV 09-08074-VAP (VBK) |
|  | ) |  |
| Plaintiff, | ) | MEMORANDUM AND ORDER DENYING |
|  | ) | PLAINTIFF'S MOTION FOR |
| v. | ) | PRELIMINARY INJUNCTION WITHOUT |
|  | ) | PREJUDICE |
| N. GRANNIS, et al., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

Pro se prisoner Angie Marie Briones (hereinafter referred to as "Plaintiff") filed a Civil Rights Complaint pursuant to 42 U.S.C. §1983 in the United States District Court for the Central District of California on November 14, 2009, pursuant to the Court's Order re Leave to File Action Without Prepayment of Full Filing Fee.

On December 18, 2009, the Court issued an Order granting Plaintiff's request to proceed in forma pauperis and issued an Order directing service of process by the United States Marshals on Defendants Dr. Wu, Dr. Finander, Nurse Sisson and Nurse Frances. (See Docket Nos. 10, 11, 13.)[1]

---

[1] The United States Marshals have not yet served Defendants with the Summons and Complaint. In a Minute Order dated September 1, 2010, the Court has ordered the United States Marshals to promptly serve

On January 22, 2010, Plaintiff filed a document entitled "Motion for Order to [Show] Cause For An Injunction" ("Motion")(see Docket No. 20); "Declaration of Angie Briones" ("Plaintiff's Decl."); and a "Supplemental Amended Complaint" ("First Amended Complaint"). Plaintiff is a transsexual[2] (male to female) and contends that she has been denied adequate pain management and estrogen hormone therapy. Plaintiff seeks a temporary restraining order and permanent injunction to insure that she receives constitutionally mandated medical care to treat her transsexualism.

Plaintiff alleges that she has been denied estrogen hormone therapy and pain medication treatment, and that Defendants have acted with deliberate indifference to Plaintiff's serious medical needs, transgenderism and lower chronic back pain. (First Amended Complaint at pp. 2-5.)

Plaintiff alleges prior to her arrival at California State Prison-Lancaster ("CSP-LAC") in June of 2009 she had been under treatment and receiving estrogen hormone therapy and pain management therapy for approximately nine years as noted in her California Department of Corrections and Rehabilitation ("CDCR") prison medical file. (Motion at 10-11; See First Amended Complaint, attached pages, Letter to Dr. Lee ,a prison physician,dated September 16, 2006 from

---

Defendants with a copy of the "First Amended Complaint" and "Motion For Order to [Show] Cause for an Injunction" filed on January 22, 2010, and Plaintiff's "Motion for A Temporary Restraining Order and Preliminary Injunction" and "Sworn Declaration of Angie Marie Briones in Support of T.R.O." filed on August 17, 2010.

[2]   A transsexual is "one who has '[a] rare psychiatric disorder in which a person feels persistently uncomfortable about his or her anatomical sex' and who typically seeks medical treatment, including hormone therapy and surgery to bring about  a permanent sex change." Farmer v. Brennan, 511 U.S. 825, 829 (1994)(citations omitted).

2

1  Dr. Pamela Prescott, an outside endocrinologist, who performed a
2  consultation with Plaintiff regarding hormone replacement therapy
3  while Plaintiff was imprisoned at Salinas Valley State Prison.)  Upon
4  her arrival at CSP-LAC, Plaintiff alleges Defendants Dr. Wu, Dr.
5  Finander, Nurse Frances and Nurse Sisson have denied Plaintiff
6  estrogen hormone therapy and pain management treatment. (First Amended
7  Complaint at 2-5; Motion at 10-11.)  Plaintiff alleges that these
8  Defendants have consciously and arrogantly defied orders by
9  transgender and pain specialists prescribing medications for
10 Plaintiff. (Motion at 4, 12-14; First Amended Complaint, attached
11 pages; Plaintiff's Decl.)  Plaintiff alleges that the medical
12 Defendants employed at CSP-LAC are not trained nor qualified to
13 assess, diagnose nor treat Gender Identity Disorder (a.k.a.
14 transsexualism, a.k.a. gender dysphoria).  (First Amended Complaint,
15 attached pages.)

16    Plaintiff alleges she is experiencing adverse effects resulting
17 from Defendants' arbitrary peremptory halting of her estrogen hormone
18 therapy which includes but is not limited to significant infliction of
19 physical, emotional and mental pain due to reduction of fat tissue
20 around her breasts, cheeks, hips and buttocks, causing bruising,
21 constriction of the skin and severe soreness.  The lack of estrogen
22 hormone treatment has also reversed many of the female characteristics
23 previously attained through years of estrogen hormone treatment and
24 has resulted in a chemical imbalance  causing great irritability,
25 anxiety attacks, jitteriness, stress, distress, frustration, vomiting,
26 erections, grave depression, suicidal thoughts, fainting spells, cold
27 and hot flashes and other serious harm. (See First Amended Complaint,
28 attached pages.)

3

Plaintiff alleges on July 8, 2009, she was seen by Defendant Dr. Wu, who canceled Plaintiff's pain medications of Gabapentin and Robaxin and only ordered Motrin for her lower chronic back pain. (Motion at 11; First Amended Complaint, attached pages.)  Dr. Wu stated that he saw no medical indication for use of Gabapentin and Robaxin for Plaintiff's back pain.  Dr. Wu did a full view visual examination on Plaintiff's lower back; however, he did not touch Plaintiff's lower back, nor did he perform range of motion tests, order x-rays or an MRI.  Dr. Wu said, "Your back looks fine."  Dr. Wu also refused Plaintiff's request to continue hormone therapy, stating, "Only a transgender specialist can order hormones."  Dr. Wu however, did not refer Plaintiff to a transgender specialist. (Motion at 10-11; First Amended Complaint, attached pages.)

On July 9, 2009, Plaintiff requested in writing that her hormone therapy and pain management therapy be restarted.

On July 27, 2009, Plaintiff submitted another request to be seen urgently for the same issues. (Id.)

On July 29, 2009, Plaintiff saw Defendant Nurse Esther Frances, who asked Plaintiff whether she was seeing a transgender specialist. (Motion at 12; First Amended Complaint, attached pages.)  Plaintiff inquired about a transgender specialist referral made by Dr. Wu; however, Defendant Nurse Frances said no referral was made by Dr. Wu in her file but she said she would write a referral to the transgender specialist.  Plaintiff told Defendant Nurse Frances of his pain; however, Nurse Frances did not order Plaintiff's previous pain medications, stating she would not interfere with Dr. Wu's order of Motrin.  Plaintiff informed Defendant Nurse Frances that other staff physicians and pain management specialists had prescribed Gabapentin

4

medication for Plaintiff's chronic lower back pain. (Id.)

On July 31, 2009, Defendant Chief Medical Officer Dr. Finander canceled the transgender specialist referral made by Defendant Nurse Frances with no explanation. Plaintiff filled out a CDCR 7362 Health Care Services form requesting pain medication and hormone therapy. (Motion at 12.)

In August of 2009, Plaintiff was feeling depressed and suicidal. Plaintiff alleges that the lack of estrogen hormone therapy and hormone withdrawal side effects have caused her severe pain, both emotionally, mentally and physically and have greatly affected her health. (See First Amended Complaint, attached pages.)

On August 28, 2009, Plaintiff was seen by Defendant Dr. Wu and she advised him of the side effects she was experiencing due to estrogen withdrawals. Dr. Wu said there was no medical need for hormone therapy and he would not and could not prescribe hormones. Only the transgender specialist can prescribe hormones. (See Motion at 12.)

On September 15 and September 16, 2009, Plaintiff filed CDC 602 grievance forms regarding denial of hormone therapy and pain medications. Plaintiff also saw Nurse Frances and advised her of his pain. (See First Amended Complaint, attached pages; Motion at 13.)

On September 22, 2009, Plaintiff wrote a letter to Defendant Warden Haws and to the Receiver of all medical care throughout CDCR about her severe pain and side effects from estrogen hormone withdrawals. On October 5, 2009, Plaintiff submitted another CDC 602 grievance form regarding the denial of hormone therapy and pain medication. Plaintiff explained to Defendant Nurse Frances that she had been diagnosed by a pain management specialist with neuropathic

radicular low back pain and required specific pain medications. (First Amended Complaint, attached Exhibits; Motion at 13.)

On November 2, 2009, Plaintiff saw Dr. Stepke regarding her complaints of back pain and the side effects from the withdrawal of hormone therapy. Dr. Stepke told Plaintiff she should have been on hormones when she first arrived at CSP-LAC, because it is a CDCR written policy that transgenders upon arrival to a prison remain on hormones if they had been previously prescribed by the transfer prison. Dr. Stepke also ordered Robaxin and Naprosyn for Plaintiff's muscle spasms and lower back pain at this visit. (See First Amended Complaint, attached pages.)

On November 3, 2009, Plaintiff was seen by Dr. Bazile, a transgender specialist, who consulted with and counseled Plaintiff. (Motion at 14; First Amended Complaint, attached pages.) Dr. Bazile recommended that Plaintiff resume hormone replacement therapy and should start on an Estradiol patch of 0.4 mgs topically twice weekly (estrogen), and Spironolactone 100 mgs twice a day (hypertension medication). (See First Amended Complaint, attached pages.)

On November 12, 2009, Plaintiff was seen by Defendant Dr. Wu. Plaintiff told him that she had seen the transgender specialist and he had restarted her hormones. Defendant Dr. Wu said that he did not see any orders and that he reviewed a CDC 602 grievance that Plaintiff had written on him and Defendant Dr. Finander. Defendant Dr. Wu started to laugh and thereafter called Defendant Dr. Finander and was talking to her about Plaintiff's 602 grievance. (Plaintiff's Decl.; First Amended Complaint, attached pages.)

On November 13, 2009, Plaintiff received her first dosage of Spironolactone and was told she needed to sign a consent form in

order to start hormone therapy. Plaintiff signed the consent form that night and thereafter signed another consent form. (Id.)

On November 25, 2009, Plaintiff was seen by a nurse to take Plaintiff's blood pressure. It was elevated to 146 over 86. Plaintiff explained that she had just finished playing volleyball, which is an exercise she does for her back pain, in order to build muscle in her lower back. (First Amended Complaint, attached pages; Motion at 14.)

Defendant Dr. Finander responded to Plaintiff's CDC 602 grievance and denied hormones based on one blood pressure reading of 146 over 86 and refused to allow Plaintiff to start her hormone therapy. Dr. Finander also prescribed aspirin to treat Plaintiff's lower back pain for three days only. Plaintiff alleges that the Spironlactone medication does not work the same way as estrogen. Plaintiff alleges when she came to CSP-LAC her breast size was a "C" cup and now it is below an "A" cup. (Motion at 15.) Plaintiff alleges she is in severe pain both physically and mentally. Id.

Plaintiff alleges she has filed CDC 602 grievances and has received a second level response; however, she has not received a response at the Director's Level. Id.

**PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF**

Plaintiff seeks a preliminary injunction to continue Plaintiff on the following hormone therapy:

"(1) Del Estrogen injection 40 ml 2x a month;

(2) Premarin 10 mg 1x a day;

(3) Chrono for bra;

(4) to also continue and renew her pain management therapy and chrono for her last CDCR order.

> 1. Gabapentin 1200 mg 3x a day;
> 2. Tramadol 50 mg 3x a day;
> 3. Chrono for pressure mattress." (Motion at 17; First Amended Complaint at 6.)

## PRELIMINARY INJUNCTION STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equity tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365, 374 (2008); see also Nelson v. National Aeronautics and Space Administration, 568 F.3d 1028, 1030 n.5 (9th Cir. 2009)(recognizing that Winter modified the preliminary injunction standard). When a preliminary injunction alters the status quo by commanding a positive act, we must subject such relief to heightened scrutiny and cannot grant the injunction "unless the facts and law clearly favor the moving party." Dahl v. HEM Pharm. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993). A request for preliminary injunction, in the prison context, must be viewed with great caution as judicial restraint is especially called for when dealing with "the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 519 (8th Cir. 1995)(citations omitted); see also Walker v. Woodford, 454 F.Supp.2d 1007, 1030 (S.D. Cal. 2006).

However, in order for this Court to consider Plaintiff's request for a preliminary injunction, it must first consider whether the Court has personal jurisdiction over the parties. "A federal court may issue an injunction if it has personal jurisdiction over the parties

and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the Court." Zepeda v. United States Immigration Service, 753 F.2d 719, 727 (9th Cir. 1985). Plaintiff is seeking injunctive relief against Defendants who have not yet been served with the Summons and First Amended Complaint.

## DISCUSSION

Plaintiff alleges that Defendants have violated her Eighth Amendment right to be free from cruel and unusual punishment by their deliberate indifference to her serious medical needs. Plaintiff is a transsexual and contends that Defendants' denial of hormone therapy and pain management constitutes deliberate indifference to her serious medical needs. A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976); Johnson v. Meltzer, 134 F.3d 1393, 1398 (9th Cir.), cert. denied, 525 U.S. 840 (1998). To state a deliberate indifference claim, a prisoner plaintiff must allege both that the deprivation of medical care in question was objectively serious, and that the defendant official acted with a subjectively culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321 (1991). The required showing of deliberate indifference is satisfied when it is established that "the official knew of and disregarded a substantial risk of serious harm to [the prisoner's] health or safety." Johnson, 134 F.3d at 1398 (citing Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970 (1994).

The courts have recognized that deliberate indifference to serious medical needs may be manifested in two ways: "It may appear

when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison officials provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1998)(citing Estelle v. Gamble, 429 U.S. at 105). In either case, however, the indifference to the inmate's medical needs must be purposeful and substantial; negligence, inadvertence, or differences in medical judgment or opinion do not rise to the level of a constitutional violation. Jackson v. McIntosh, 90 F.3d 330, 331 (9th Cir.), cert. denied, 519 U.S. 1029 (1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981).

A mere difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Thus, deliberate indifference is not shown if the defendant has based his actions on a medical judgment that either of two alternative courses of treatment would be medically acceptable under the circumstances. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Where defendant doctors have chosen one course of action and a plaintiff contends that they should have chosen another course of action, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, ... and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Id.

An inmate's transsexualism is a serious medical need to which prison officials may not be deliberately indifferent without violating the Eighth Amendment. See White v. Farmer, 849 F.2d 322, 325 (8th Cir. 1988) and Merriweather v. Faulkner, 821 F.2d 408, 417 (7th Cir. 1987),

10

1  cert. denied, 484 U.S. 935 (1987).

2  Here, if Plaintiff can show a likelihood of success on the merits for her Eighth Amendment claim for deliberate indifference to medical care, then she could be entitled to preliminary injunctive relief. At this time without Defendant Doctors response or medical expert opinion, it is unclear to the Court whether Defendants' denial of hormone therapy to Plaintiff constitutes deliberate indifference. The Court notes that Defendants have not categorically denied Plaintiff medical treatment; however, the Court is concerned with Defendants' apparent failure to comply with CDCR regulations regarding continuing hormone therapy for transgender inmates upon prison transfers. (See California Correctional Health Care Services Manual, Chapter 26, Hormone Therapy for Transgender Inmate Patients.)

Further, the records seem to suggest that recommendations of Dr. Bazile, a transgender specialist, that Plaintiff be reinstated on hormone therapy (Estradiol patch 0.4 mgs topically twice weekly) in November of 2009 was never followed up on by Defendants. The Court is also concerned regarding the failure to provide Plaintiff with the pain medications for Gabapentin and Robaxin prescribed by Dr. Stepke on November 12, 2009.

Plaintiff in her Motion for injunctive relief requests the Court to compel Defendants to provide Plaintiff with specific medications which she contends the failure to provide her with constitutes deliberate indifference. As noted in Plaintiff's records, some of the doctors who treated Plaintiff differ in their opinions with respect to the specific type of medication which should be prescribed. This failure to provide Plaintiff with her requested medications is not sufficient to state a claim of deliberate indifference. Thus, it

11

cannot be said that Plaintiff has demonstrated a likelihood of success on the merits.  Plaintiff's Motion is therefore Denied without prejudice.

DATED: September 14, 2010

_Virginia A. Phillips_
VIRGINIA A. PHILLIPS
UNITED STATES DISTRICT JUDGE

Presented this  7th  day of September, 2010 by:


_____/s/_____
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE